1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   TARA S. MOON,

11                    Plaintiff,              CASE NO. 3:15-CV-05218-DWC

12          v.                                ORDER ON PLAINTIFF'S
                                              COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
                      Defendant.
15

16          Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

17   denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

18   Security Income Benefits ("SSI"). The parties have consented to proceed before a United States

19   Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule

20   MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

21          After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

22   erred by improperly discounting the opinions of three of Plaintiff's examining physicians and

23

24

1  two of Plaintiff's examining psychologists. Therefore, this matter is reversed and remanded

2  pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

3  **<u>PROCEDURAL& FACTUAL HISTORY</u>**

4  On May 29, 2012, Plaintiff filed applications for DIB and SSI. *See* Dkt. 12,

5  Administrative Record ("AR") 223-235. In her applications, Plaintiff alleged she became

6  disabled on February 18, 2007, due to mental health issues and bilateral wrist injuries. *See* AR

7  230, 256, 277-78.  Plaintiff's applications were denied upon initial administrative review on

8  September 21, 2012, and on reconsideration on January 25, 2013. *See* AR 148-170. A hearing

9  was held before an ALJ on August 14, 2013, at which Plaintiff, represented by counsel, appeared

10  and testified. *See* AR 50.

11  On September 16, 2013, the ALJ found Plaintiff was not disabled within the meaning of

12  Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 44. Plaintiff's request

13  for review of the ALJ's decision was denied by the Appeals Council on March 2, 2015, making

14  that decision the final decision of the Commissioner of Social Security (the "Commissioner").

15  *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On April 8, 2015, Plaintiff filed a complaint in this

16  Court seeking judicial review of the Commissioner's final decision.

17  Plaintiff argues the denial of benefits should be reversed and remanded for the immediate

18  payment of benefits, or in the alternative, for further proceedings, because the ALJ erred by

19  failing to give: (1) legally sufficient reasons for rejecting the opinions of Plaintiff's examining

20  physicians; (2) legally sufficient reasons for rejecting the opinions of Plaintiff's examining

21  psychologists; and (3) specific, clear and convincing reasons for finding Plaintiff not fully

22  credible. Dkt. 18, p.1.

23

24

1

**STANDARD OF REVIEW**

2   Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3 security benefits only if the ALJ's findings are based on legal error or not supported by

4 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

6 more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

8 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

9

**DISCUSSION**

10   I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

11      **A.  Standard**

12   The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

13 opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

14 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

15 *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  However, "[i]n order to discount the opinion of an

16 examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

17 set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

18 *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The

19 ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and

20 conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.*

21 *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the

22 ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are

23 correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject

24

1  'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71

2  (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter*

3  *v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons

4  for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

5         Plaintiff argues the ALJ was required to provide clear and convincing reasons in order to

6  discount the opinions of Plaintiff's examining physicians. *See* Dkt. 25, pp. 6-7. But, Olegario

7  Ignacio Jr., M.D., and Edward Beaty, Ph.D., State Agency Medical Consultants, offered opinions

8  which conflicted with the opinions of Plaintiff's examining physicians and psychologists. *See*

9  AR 123-29.  A conflicting opinion from any acceptable medical source, regardless of whether

10 the conflicting source is a treating, examining, or non-examining physician, is sufficient to

11 trigger the lower standard of "specific and legitimate" reasons. *See Widmark v. Barnhart*, 454

12 F.3d 1063, 1066-67 (9th Cir. 2006) (holding the conflicting check-box opinion of a non-

13 examining physician meant the ALJ was only required to offer specific, legitimate reasons to

14 discount the opinion of an examining physician). As the record contains conflicting medical

15 opinions concerning Plaintiff's physical and mental limitations, the ALJ was only required to

16 offer specific and legitimate reasons for discounting the opinions of Plaintiff's examining

17 physicians and psychologists.

18        **B.  Application of Standard**

19        In the written decision, the ALJ assigned Plaintiff the residual functional capacity to

20 perform light work, except the claimant could never climb ladders, ropes, and scaffolds, could

21 frequently handle and finger, should avoid concentrated exposure to heights and hazardous

22 machinery, could perform simple routine tasks without public contact, and could tolerate

23 occasional contact with coworkers which did not require teamwork. AR 32. Plaintiff contends

24

1    this residual functional capacity finding was erroneous, as the ALJ improperly rejected the more

2    restrictive limitations contained in seven medical opinions rendered by six examining physicians

3    and psychologists. Specifically, Plaintiff contends the ALJ improperly substituted her judgment

4    for the medical judgments of all six examining physicians and psychologists, and erred by giving

5    the six examining physicians and psychologists' opinions less weight in favor of the opinions of

6    Dr. Ignacio, Jr. and Dr. Beaty, non-examining medical consultants.[1]

7                           1. *Stephanie Cooper, M.D.*[2]

8         Dr. Cooper examined the Plaintiff on August 28, 2012. AR 633. Though Dr. Cooper

9    reviewed some of Plaintiff's medical records as part of her evaluation, she did not have access to

10   Plaintiff's MRI reports or any other imaging study. AR 633, 636. Dr. Cooper ultimately

11   concluded Plaintiff appeared "to have a fully normal wrist examination bilaterally without

12   neurovascular compromise. Though she states she has significant wrist pain, she is able to range

13   her wrists fully and without any overt appearance of pain on [Dr. Cooper's] examination." AR

14   636. But, Dr. Cooper limited Plaintiff to carrying no more than 10 pounds occasionally, and

15   limited Plaintiff to reaching, handling, feeling, and grasping only occasionally. AR 636.

16        The ALJ gave great weight to Dr. Cooper's examination results. AR 39-40. However, the

17   ALJ discounted Dr. Cooper's opinion concerning Plaintiff's exertional and manipulative

18   limitations, as the limitations were "inconsistent with [Dr. Cooper's] findings on the examination

19   which include full range of motion without pain or crepitus, as well as the claimant's reported

20   activities of daily living." AR 40. Plaintiff argues the ALJ impermissibly made her own medical

21

22   _____

23        [1] Dr. Ignacio and Dr. Beaty reviewed the medical evidence of record and opined to
     limitations consistent with the ALJ's residual functional capacity finding. AR 32, 123-29.
         [2] The Court first addresses the four medical opinions concerning Plaintiff's physical
24   impairments, followed by the three medical opinions concerning Plaintiff's mental impairments.

ORDER ON PLAINTIFF'S COMPLAINT - 5

1    judgments and substituted them for the opinion of Dr. Cooper, a trained medical professional.

2    Dkt. 18, p. 6. Plaintiff contends the ALJ should have instead fully credited Dr. Cooper's opinion.

3    The Court disagrees.

4           An ALJ may not substitute his or her judgment for that of a medical professional, nor

5    may an ALJ make independent medical findings. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th

6    Cir. 1996). However, an ALJ is responsible for resolving inconsistencies and ambiguities in the

7    medical evidence, including expert reports and opinions. *See Reddick*, 157 F.3d at 722. An ALJ

8    may also discount the opinion of a treating or examining physician if the opinion is inconsistent

9    with the treating physician's objective examination, findings, and records. *See Valentine v.*

10   *Comm'r of SSA*, 574 F.3d 685, 692 (9th Cir. 2009); *Bayliss*, 427 F.3d at 1216; *Tonapetyan v.*

11   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("our review of the record confirms that [the treating

12   physician's] reports and assessments presented at the hearing contain no objective evidence to

13   support his diagnoses, not even a clinical observation"). *See also, e.g.*, *Crosby v. Comm'r of SSA*,

14   489 Fed.Appx. 166, 168-69 (9th Cir. 2012); *Zettelmier v. Astrue*, 387 Fed.Appx. 729, 731 (9th

15   Cir. 2010). Inconsistency between Dr. Cooper's observations that Plaintiff exhibited full range of

16   motion in her wrists without pain or crepitus and Dr. Cooper's medical opinions is a specific and

17   legitimate reason for the ALJ to discount Dr. Cooper's opinions, and the Court will not disturb

18   this finding.

19          The ALJ also discounted Dr. Cooper's opinion because it was inconsistent with

20   Plaintiff's "reported activities of daily living." AR 40. However, the ALJ did not identify what

21   specific activities were inconsistent with Dr. Cooper's opinion. AR 40. The ALJ's failure to

22   identify specific conflicting activities of daily living, or otherwise explain the nature of the

23   alleged conflict, was error. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). *See*

24

1   *also Pletsch v. Colvin*, 2015 WL 419094, *3 (W.D. Wash. 2015). As the ALJ had other valid

2   reasons for discounting Dr. Cooper's opinion, this error was harmless. *See Molina v. Astrue*, 674

3   F.3d 1104, 1115 (9th Cir. 2012).

4                         2. *Catherine Smith, M.D.*

5           On July 2, 2007, five months after Plaintiff's alleged disability onset date, Dr. Smith

6   examined Plaintiff. AR 556. Dr. Smith documented reduced range of motion in Plaintiff's

7   cervical spine, and tenderness to palpitation in Plaintiff's wrists and medial knees. AR 557. Dr.

8   Smith also documented contusions on Plaintiff's wrists and knees, and documented Plaintiff's

9   report of cysts in her wrists. AR 556, 558. Dr. Smith opined Plaintiff had marked limitations in

10  her ability to stand, walk, lift, handle, and carry, due to her cervical sprain, knee contusions and

11  sprains, and wrist contusions and sprains. AR 558.  Dr. Smith further opined Plaintiff would be

12  restricted to sedentary work for at least six months. AR 558-59. The ALJ discounted Dr. Smith's

13  opinion for four reasons:

14          [I]t is inconsistent with consultative examiner, Dr. Cooper's findings that the
            claimant had full range of motion of the wrists, as well as the claimant's
15          demonstrated activities of daily living. At the hearing, the claimant testified that
            she remains able to go grocery shopping, prepare meals, and perform home
16          housework, each of which require some degree of activity beyond that precluded
            by Dr. Smith. Further, Dr. Smith did not have the opportunity to review the
17          complete medical evidence of record, including materials produced subsequent to
            her review. Moreover, that the claimant did not seek out or receive the surgery
18          contemplated by Dr. Smith further undermines the accuracy of Dr. Smith's
            opinion.
19
20  AR 40. These were not specific and legitimate reasons for discounting Dr. Smith's opinions.

21          The inconsistency between Dr. Cooper's opinions and her contemporaneous clinical

22  observations was a specific and legitimate reason for the ALJ to discount *Dr. Cooper's* opinions.

23  But, the logic of doing so is attenuated when one physician's clinical observations are compared

24  to a *different* physician's examination and opinions, especially if the other physician based her

1   opinions on independent clinical findings.  *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

2   *See also Ryan v. Commissioner of Social Sec. Admin*, 528 F.3d 1194, 1200 (9th Cir. 2008)

3   ("Nothing in [one examining doctor's report] rules out [another examining doctor's] more

4   extensive findings") (*quoting Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

5   1299 (9th Cir. 1999)). For example, unlike Dr. Cooper, Dr. Smith examined Plaintiff within a

6   few months of her alleged disability onset date and noted bilateral wrist contusions. AR 556,

7   558. Dr. Smith also documented Plaintiff's complaint of cysts, while there is no indication from

8   Dr. Cooper's report that Dr. Cooper was aware of Plaintiff's diagnosis of ganglion cysts. *See* AR

9   273-284, 633-36. Further, the ALJ claimed Dr. Cooper's examination findings were inconsistent

10  with Dr. Smith's opinion specifically because Dr. Cooper found Plaintiff exhibited full range of

11  motion in her wrists. AR 40. However, both Dr. Smith and Dr. Cooper were in agreement on this

12  point, as Dr. Smith also noted Plaintiff exhibited full range of motion in her wrists. AR 561.

13  Because Dr. Smith's opinion was supported by independent clinical findings unavailable to Dr.

14  Cooper, inconsistency with Dr. Cooper's examination results is not a specific and legitimate

15  reason to discount Dr. Smith's opinion.

16      The ALJ's other three reasons for discounting Dr. Smith's opinion are also not specific

17  and legitimate reasons supported by substantial evidence. First, Plaintiff's testimony concerning

18  her grocery shopping, meal preparation, and home housework is not actually inconsistent with

19  Dr. Smith's opined limitations. *See* AR 40, 556 (limiting Plaintiff to sedentary activity, meaning

20  lifting no more than 10 pounds at one time, frequently lifting small articles such as files and

21  small tools, and sitting, walking, and standing for brief periods) AR 54-56 (Plaintiff testified she

22  does the dishes, does laundry, dusts, cooks, and takes out the trash, but cannot vacuum due to her

23  wrists, cannot change the bedsheets, and cannot drive), 83 (Plaintiff testified she goes grocery

24

shopping once per month, only with her boyfriend, who drives her and carries heavy items for her), AR 84 (Plaintiff testifying she cooks rice, pasta, and sauces). *See also, e.g.*, *Pletsch,* 2015 WL 419094, at \*3. Second, Plaintiff explained she was not able to pursue hand surgery because she lacked insurance. *See, e.g.*, AR 69, 579. The ALJ never considered Plaintiff's allegation she lacked insurance or any other means of paying for surgery, as the ALJ was required to do under Social Security Ruling 96-7p. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, \*7. *See also Regenniter*, 166 F.3d at 1296. To the extent the ALJ was suggesting Plaintiff's functioning was inconsistent with an impairment which would require surgery, the ALJ failed to set forth the requisite statement of facts and conflicting clinical evidence necessary to support such a finding. *See Reddick*, 157 F.3d at 725.  Because the ALJ failed to consider Plaintiff's stated reasons for not obtaining the surgery, it was error to reject Dr. Smith's opinion on the basis of Plaintiff's lack of surgery. Third, the ALJ failed to identify what medical evidence Dr. Smith was unable to review, and failed to explain how the unavailable evidence contradicted Dr. Smith's findings and opinions. *See Embrey*, 849 F.2d at 421-22.

As the ALJ did not offer specific and legitimate reasons supported by substantial evidence to reject Dr. Smith's opinion, the ALJ erred.

### 3. *M. Saint Clair*, M.D.

Dr. Saint Clair examined the Plaintiff on March 7, 2008. AR 570. Dr. Saint Clair found Plaintiff had marked to severe limitations in her ability to stand, walk, lift, handle or carry, and opined Plaintiff should be limited to sedentary work with additional restrictions, including restrictions from engaging in "rapid fine manipulation" with her hands, performing jobs requiring strong grip strength, knee bending, standing longer than 30 minutes, or walking more

1  than a block without rest, and a limitation against lifting weights greater than twenty pounds. AR

2  572. The ALJ gave Dr. Saint Clair's opinion little weight for the following four reasons:

> 3  Dr. Saint Clair's opinion is also rejected for the same reasons as Dr. Smith's
>    opinion. Specifically, this opinion is inconsistent with the medical evidence of
> 4  record including Dr. Cooper's consultative examination results, and is
>    inconsistent with the claimant's activities of daily living. Additionally, the
> 5  claimant's lack of subsequent surgery undermines the accuracy of Dr. Saint
>    Clair's opinions. Moreover, Dr. Saint Clair's finding of knee bursitis was not even
> 6  identified by the claimant at the hearing as a current impairment.

7  AR 41. As with Dr. Smith, these were not specific and legitimate reasons, supported by

8  substantial evidence, for rejecting Dr. Saint Clair's opinion.

9        Unlike Dr. Cooper, who acknowledged she was unable to review MRI reports or other

10  imaging studies of Plaintiff's wrists, Dr. Saint Clair reviewed bilateral wrist MRIs indicating

11  Plaintiff had a fractured left wrist, ganglion cyst, and torn/perforated fibrocartilage and ligament

12  in her right wrist. AR 571, 636. On physical examination, Dr. Saint Clair also documented

13  reduced bilateral range of motion in Plaintiff's hands, as well as a two and one-half inch fluid

14  mass proximal to Plaintiff's left ulnar styloid. AR 571. As with Dr. Smith, Dr. Saint Clair based

15  her diagnosis and conclusions on clinical findings unavailable to Dr. Cooper; thus, contradiction

16  between Dr. Saint Clair's opinions and Dr. Cooper's examination results was not a specific and

17  legitimate reason, supported by substantial evidence, for discounting Dr. Saint Clair's opinion.

18  *See Orn,* 495 F.3d at 632.

19        The ALJ's other reasons for discounting Dr. Saint Clair's opinion were also insufficient.

20  As with Dr. Smith, the ALJ erred by failing to specify what activities of daily living actually

21  contradicted Dr. Saint Clair's opinion. *See Burrell*, 775 F.3d at 1138. Even if, as the Defendant

22  argues, the ALJ had meant to refer to the same activities of daily living she cited to discredit Dr.

23  Smith, the ALJ's findings on this point would not have been supported by substantial evidence as

24

1    Plaintiff's testimony concerning her grocery shopping, cooking, and household chores was also

2    not actually inconsistent with Dr. Saint Clair's opined limitations. AR 54-56, 83-84, 572. *See*

3    *also* Section I(B)(2), *supra*. As with Dr. Smith, the ALJ's reliance on Plaintiff's lack of surgery

4    was not a specific and legitimate reason for discounting Dr. Saint Clair's opinion. *See* Section

5    I(B)(3), *supra*. *See also* SSR 96-7p, 1996 WL 374186, *7; *Regenniter,* 166 F.3d at 1296;

6    *Reddick*, 157 F.3d at 725. Finally, the fact Dr. Saint Clair diagnosed a condition (knee bursitis)

7    which Plaintiff did not identify as a current impairment is not a specific and legitimate reason for

8    discounting Dr. Saint Clair's opinion, as the ALJ did not explain why this statement of fact leads

9    to a conclusion that the treating physician's opinion should be disregarded. *See Widmark*, 454

10   F.3d at 1068-69 (ALJ's stated reason for discrediting treating physician's opinion, "[n]o other

11   physician has cited any significant restrictions related to right thumb impairment," was a mere

12   statement of fact. ALJ was required to explain how this fact led to conclusion the treating

13   physician's opinion should be disregarded).

14       As these were not specific and legitimate reasons supported by substantial evidence, the

15   ALJ erred by rejecting Dr. Saint Clair's opinion.

16               4. *Tina Shereen, M.D.*

17       Dr. Shereen examined Plaintiff on January 14, 2009. AR 578. Like Dr. Saint Clair, Dr.

18   Shereen had an opportunity to review Plaintiff's MRI records, and noted Plaintiff had a large

19   perforation in the triangular fibrocartilaginous complex in her right wrist as well as a trabecular

20   fracture in her left wrist. AR 375, 579. Dr. Shereen also noted Plaintiff exhibited pain in her

21   wrists on extension, despite a full range of motion. AR 579. Dr. Shereen found Plaintiff had

22   marked limitations in her ability to lift, handle or carry, and opined Plaintiff should be restricted

23

24

1    to sedentary work which did not "involve intensive use of hands." AR 580. Dr. Shereen also

2    recommended wrist surgery. AR 581.

3           The ALJ gave little weight to Dr. Shereen's opinions for essentially the same reasons the

4    ALJ discounted the opinions of Dr. Smith and Dr. Saint Clair: namely, "Dr. Shereen's opinion is

5    inconsistent with the opinion of Dr. Cooper, as well as the claimant's activities of daily living.

6    Further, Dr. Shereen wrote that the claimant required surgery, which is inconsistent with the

7    claimant's demonstrated functioning absent surgery." AR 41. As with Dr. Smith and Dr. Saint

8    Clair, these were not specific and legitimate reasons, supported by substantial evidence, to

9    discount Dr. Shereen's opinion. *See* Section I(B)(2)-(3), *supra*.

10                               5. *Victoria McDuffee, Ph.D.*

11          Dr. McDuffee conducted a psychological examination of Plaintiff on two occasions. On

12   April 6, 2011, Dr. McDuffee performed a clinical interview, conducted a mental status

13   examination, and administered the Minnesota Multiphasic Personality Inventory ("MMPI"). AR

14   595-603. Dr. McDuffee performed a subsequent clinical interview and mental status examination

15   on April 5, 2012. AR 604-11.

16                               i.   *Dr. McDuffee's April 6, 2011 Opinion*

17          In her April 6, 2011 opinion, Dr. McDuffee diagnosed Plaintiff with several mental

18   health disorders, including anxiety, depression, anger, and unspecified cognitive problems and

19   delusions. AR 596-97. Dr. McDuffee opined Plaintiff's anxiety would cause severe limitations in

20   her ability to perform basic work tasks, and Plaintiff's insomnia, depression, and cognitive

21   problems would cause marked limitations in her ability to perform basic work tasks. AR 596-97.

22   Dr. McDuffee concluded Plaintiff would have severe limitations in her ability to communicate

23   and perform effectively in a work setting and to maintain appropriate behavior in a work setting

24

1   as a result of her mental disorders. AR 597-98. Dr. McDuffee also concluded Plaintiff would

2   have moderate limitations in her ability to be aware of normal hazards, follow complex

3   instructions, learn new tasks, and perform effectively in a work setting involving *limited* public

4   contact. AR 598.

5        The ALJ discounted Dr. McDuffee's 2011 opinion because "it [was] based on the

6   claimant's subjective complaints, which are less than credible." AR 41. The ALJ also discounted

7   Dr. McDuffee's 2011 opinion because Plaintiff's symptoms were inconsistent with her

8   functioning during the examination, and the ALJ believed "the significant degree of limitation

9   described by Dr. McDuffee based on the claimant's presentation either sought to exaggerate her

10  symptoms during this examination or else her symptoms improved significantly from this level."

11  AR 41. These were not specific and legitimate reasons for discounting Dr. McDuffee's opinion.

12       An "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

13  claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*,

14  533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d

15  595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However, this

16  is distinguishable from a situation where a treating or examining physician makes independent

17  observations and supports his or her conclusions with other evidence. *See Ryan*, 528 F.3d at

18  1199-1200; *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (holding the

19  ALJ's rejection of an examining psychologist's report due to "doubts about [the claimant's]

20  overall credibility"] was impermissible speculation unsupported by substantial evidence).

21  "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical

22  observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d

23  1154, 1162 (9th Cir. 2014).

24

1    While Dr. McDuffee documented Plaintiff's self-reported complaints and medical history

2    as part of her examination, Dr. McDuffee also made clinical observations and identified

3    limitations and cognitive deficiencies as part of a mental status examination and her

4    administration of the MMPI. AR 600-03. Plaintiff's MMPI results suggested Plaintiff was

5    possibly over-reporting her symptoms; however, Dr. McDuffee explicitly considered this

6    possibility when interpreting the results of the test and "in light of the respondent's clinical

7    history, clinical interview, and observation." AR 600. Thus, the ALJ's conclusion that Dr.

8    McDuffee based her opinions on Plaintiff's subjective complaints was not supported by

9    substantial evidence.

10    Defendant argues Dr. McDuffee's discussion of Plaintiff's self-reported symptoms

11    necessarily means Dr. McDuffee must have based her conclusions primarily on those reports,

12    rather than on other clinical findings or objective evidence. *See* Dkt. 24, pp. 13-14. This

13    argument, however, ignores both the nuances in a mental health practitioner's clinical

14    evaluations, as well as the content of Dr. McDuffee's opinion. As this Court has previously

15    noted:

16    "[E]xperienced clinicians attend to detail and subtlety in behavior, such as
      the affect accompanying thought or ideas, the significance of gesture or
17    mannerism, and the unspoken message of conversation. The Mental Status
      Examination allows the organization, completion, and communication of these
18    observations." . . . "Like the physical examination, the Mental Status Examination
      is termed the *objective* portion of the patient evaluation."
19    The Mental Status Examination generally is conducted by medical
      professionals skilled and experienced in psychology and mental health. Although
20    "anyone can have a conversation with a patient, [] appropriate knowledge,
      vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status
21    examination.'"

22    *Blessing v. Astrue*, 2013 WL 316153, *7 (W.D. Wash. 2013) (internal citations omitted) (*quoting*

23    Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4

24

1  (Oxford University Press 1993). Further, there is no indication Dr. McDuffee based her opinions

2  to a larger extent on Plaintiff's subjective reporting as opposed to independent clinical findings

3  and objective medical evidence, including the Mental Status Examination and the MMPI results.

4  *See* AR 595-603. *Ghanim*, 763 F.3d at 1162.

5       Defendant also argues Dr. McDuffee's April, 2011 opinion was inconsistent with

6  Plaintiff's functioning during the examination. Dkt. 24, p. 14. But, the ALJ failed to cite any

7  evidence or offer any reasoning to support this conclusion. *See* AR 41; *Reddick*, 157 F.3d at 725.

8  Defendant attempts to remedy this deficiency by arguing Dr. McDuffee's April, 2011 opinion

9  reflects Plaintiff was adequately groomed, was cooperative, had normal perception, showed fair

10  judgment, and scored between 24 and 30 on a "mini-mental status" examination. AR 601-603.

11  However, "[l]ong-standing principles of administrative law require us to review the ALJ's

12  decision based on the reasoning *and actual findings* offered by the ALJ—not *post hoc*

13  rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v.*

14  *Commissioner of Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added).

15  Moreover, even if the ALJ had specifically cited these aspects of Dr. McDuffee's April, 2011

16  opinion, this information would not demonstrate a conflict between Dr. McDuffee's opinion and

17  Plaintiff's presentation at the examination as the ALJ also failed to consider significant probative

18  findings in Dr. McDuffee's report. Though Dr. McDuffee's Mental Status Examination indicated

19  Plaintiff had normal perception, fair judgment, and a high score on a "mini-mental status" test,

20  the Mental Status Examination also reflects Plaintiff had poor insight, impaired remote memory,

21  impaired calculation, impaired attention, impaired abstract thinking, and revealed Plaintiff was

22  not fully oriented to time and circumstance. AR 602. Though Dr. McDuffee observed Plaintiff

23  was adequately groomed at the 2011 examination, she also documented anxious mood, flat

24

ORDER ON PLAINTIFF'S COMPLAINT - 15

affect, and fidgeting. AR 602. These are significant probative findings which the ALJ could not ignore when evaluating Dr. McDuffee's opinion. *See Flores*, 49 F.3d at 570-71. *See also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("[I]n determining whether there is substantial evidence to support the examiner's finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusions.").

In sum, the ALJ erred by failing to offer specific and legitimate reasons, supported by substantial evidence, for discounting Dr. McDuffee's April 6, 2011 opinion.

*ii.    Dr. McDuffee's April 5, 2012 Opinion*

In her 2012 opinion, Dr. McDuffee made essentially the same observations as in her 2011 opinion. The only significant difference between the two opinions concerns Plaintiff's grooming during the examinations:  during the 2012 examination, Dr. McDuffee noted Plaintiff appeared "marginally" groomed and adequately dressed for the weather. AR 608. This ostensibly contrasts with Plaintiff's presentation at the 2011 examination, where she appeared to be "adequately groomed." AR 602. Dr. McDuffee also attached the 2011 MMPI report at the end of her 2012 opinion. AR 610-11. The ALJ discounted Dr. McDuffee's 2012 opinion, in part, for the same reasons the ALJ discounted Dr. McDuffee's 2011 opinion; namely, Dr. McDuffee's opinion was based on Plaintiff's subjective statements, and her presentation was inconsistent with Dr. McDuffee's opinion. As explained above, the ALJ's overlapping reasons for discounting Dr. McDuffee's April, 2012 opinion were not specific and legitimate reasons supported by substantial evidence. *See* Section I(B)(5)(i), *supra*.

The ALJ also offered several new reasons to discount Dr. McDuffee's April, 2012 opinion. AR 41. However, these, too, were not specific and legitimate reasons supported by substantial evidence. The ALJ claimed Plaintiff misrepresented her past work history and prior

1    conviction for drug possession to Dr. McDuffee, as well as almost every other medical provider.

2    Contrary to the ALJ's assertion, however, Dr. McDuffee explicitly documented Plaintiff's

3    twenty-year old drug-possession offense in her 2012 opinion. AR 606. Further, this was

4    consistent with her representations to other medical providers and to the ALJ at the hearing. *See*

5    AR 86, 596, 616, 626, 671. The ALJ also relied upon Dr. McDuffee's statement "there is

6    something about [Plaintiff's] presentation that doesn't quite fit." AR 41, 607. However, the

7    ALJ's conclusion that this observation reflects "[Plaintiff's] less-than-credible statements and

8    exaggeration of symptoms" is speculation and is unsupported by citations to the record. *See*

9    *Edlund*, 253 F.3d at 1159. Finally, the ALJ suggested Dr. McDuffee failed to mention Plaintiff's

10   potential credibility issues in her 2012 opinion, despite the 2011 MMPI results indicating

11   Plaintiff was over-reporting symptoms. AR 41. This finding is contradicted by the record. Dr.

12   McDuffee attached the 2011 MMPI report—including Dr. McDuffee's prior credibility

13   assessment—to her 2012 opinion, and Dr. McDuffee's opined limitations and clinical

14   observations were essentially the same across both examinations. AR 609-10. Because the ALJ's

15   additional reasons for discounting Dr. McDuffee's 2012 opinion were also insufficient, the ALJ

16   erred by discounting Dr. McDuffee's 2012 opinion.

17                           6. *Kathleen Andersen, Ph.D.*

18            Dr. Andersen examined Plaintiff on August 27, 2012. AR 624. After conducting a

19   clinical interview and mental status examination, Dr. Andersen diagnosed Plaintiff with

20   borderline personality disorder, mood disorder NOS, anxiety disorder NOS, panic disorder, and a

21   history of eating disorder. AR 629. Dr. Andersen concluded Plaintiff would likely be an

22   unreliable employee due to her difficulty with mood reactivity and affective instability, and also

23   concluded Plaintiff would have difficulty concentrating on tasks and completing tasks in a timely

24

fashion. AR 630. The ALJ discounted Dr. Andersen's opinion for essentially the same reasons as

the ALJ discounted Dr. McDuffee's opinions: "[Dr. Andersen's] opinion that the claimant would

be an unreliable employee with difficulty concentrating on tasks and completing them in a timely

fashion is based exclusively on the claimant's unreliable statements." AR 40. The ALJ cited the

claimant's inconsistent statements regarding the reasons for her prior jobs ending, and noted the

fact Dr. Andersen indicated "the claimant gave disjointed statements regarding her limitations

and functional ability, but yet did not factor these inconsistencies into shaping the reliability of

the claimant's statements." AR 40. These were not specific and legitimate reasons for

discounting Dr. Andersen's opinions.

      As with Dr. McDuffee, Dr. Andersen supported her opinions with objective, independent

clinical findings, including a mental status examination. AR 629. Though Defendant contends

the results of the mental status examination were "essentially benign," Dr. Andersen actually

noted Plaintiff demonstrated inappropriate affect during her examination, and also demonstrated

several deficiencies in cognitive testing and in her fund of information. Dkt. 24, p. 15, AR 629.

A review of Dr. Andersen's report does not reflect her opinions were based more heavily on

Plaintiff's subjective complaints as opposed to independent clinical findings, and the ALJ erred

by discounting Dr. Andersen's opinion for this reason. *See Ryan,* 528 F.3d at 1199-1200;

*Edlund*, 253 F.3d at 1159. *See also Ghanim*, 763 F.3d at 1162; *Blessing*, 2013 WL 316153, *7.

    II.    <u>Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
Substantial Evidence, for Finding Plaintiff Not Fully Credible.</u>

      If an ALJ finds a claimant has a medically determinable impairment which reasonably

could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

1    reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

2    F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

3    for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

4    *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

5    (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

6    rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

7    in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*,

8    885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

9    evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

10   decision, the ALJ's conclusion must be upheld.").

11        Plaintiff argues the ALJ failed to offer clear and convincing reasons, supported by

12   substantial evidence, for discounting her subjective complaints. But, the ALJ cited Plaintiff's

13   inconsistent statements to various providers, the effectiveness of Plaintiff's treatment for her

14   mental and physical impairments, and Plaintiff's minimal work history prior to the alleged

15   disability onset date as reasons for discounting Plaintiff's subjective complaints and testimony.

16   AR 35-37, 244-48, 596-606, 627, 649-53, 722-23. These were clear and convincing reasons,

17   supported by substantial evidence, for discounting Plaintiff's testimony. *See* 20 C.F.R.

18   §§404.1529(c)(3), 416.929(c)(3); *Orn*, 495 F.3d at 639; *Warre v. Commissioner of Soc. Sec.*

19   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), *Thomas*, 278 F.3d at 958-59; *Allen v.*

20   *Commissioner of Social Sec.*, 498 Fed.Appx. 696, 697 (9th Cir. 2012).

21        However, an evaluation of a claimant's credibility relies, in part, on an accurate

22   assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in

23   Section I, above, the ALJ erred in evaluating the medical opinion evidence, requiring remand. As

24

1  this case must be remanded for further proceedings in any event, the ALJ should also reevaluate

2  Plaintiff's credibility anew on remand.

3      III.    Whether the Case Should be Remanded for an Award of Benefits or Further
               Proceedings

4

5          Plaintiff argues her testimony and the opinions of the various examining physicians

   should be credited as true and the case remanded for the award of benefits, rather than for further

6  proceedings.

7          Generally, when the Social Security Administration does not determine a claimant's

8  application properly, "the proper course, except in rare circumstances, is to remand to the agency

9  for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

10 2004) (citations omitted). However, the Ninth Circuit has established a "test for determining

11 when [improperly rejected] evidence should be credited and an immediate award of benefits

12 directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at

13 1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an

14 immediate award of benefits when:

15         (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
16         evidence, (2) there are no outstanding issues that must be resolved before a
           determination of disability can be made, and (3) it is clear from the record that the
17         ALJ would be required to find the claimant disabled were such evidence credited.

18 *Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v.*

19 *Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of*

20 *Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Nonetheless, an ALJ's errors are

21 relevant only to the extent they impact the underlying question of Plaintiff's disability. *Strauss v.*

22 *Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not

23 entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how

24

1   egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345,

2   357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should

3   nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that

4   a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citing

5   *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

6       Here, outstanding issues must be resolved. Even if they were fully credited, Plaintiff's

7   examining physician and psychologist opinions conflict with the opinions of Dr. Ignacio and Dr.

8   Beaty, which the ALJ had given significant weight. AR 39, 123-29. Therefore, the case should

9   be remanded for additional proceedings, rather than for the calculation of benefits.

10                              **CONCLUSION**

11      Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

12   erred by failing to properly evaluate the opinions of Plaintiff's examining physicians and

13   psychologists. Therefore, the court orders this matter be reversed and remanded pursuant to

14   sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate and reweigh all of

15   the medical opinion evidence, reevaluate Plaintiff's credibility, reevaluate Plaintiff's residual

16   functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation, as

17   appropriate. On remand, the ALJ should also develop the record as needed. Judgment should be

18   for Plaintiff and the case should be closed.

19      Dated this 8th day of December, 2015.

20

21

22                    David W. Christel
                      United States Magistrate Judge

23

24